IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 19-786

Filed: 2 June 2020

Cabarrus County, No. 17 CVS 1131

TONY RAY SIMMONS, JR., Plaintiff,

v.

JOHN LEE WILES, Defendant.

Appeal by defendant from judgment and orders entered 22 April 2019 by Judge
Beecher R. Gray in Cabarrus County Superior Court.  Heard in the Court of Appeals
30 April 2020.

*Law Offices of L.T. Baker, P.A., by Lucas T. Baker, for plaintiff-appellee.*

*Arnold & Smith, PLLC, by Paul A. Tharp, for defendant-appellant.*

YOUNG, Judge.

This appeal arises out of a battery claim.  The trial court did not err in granting
Plaintiff's motion for directed verdict for the common law battery claim, or in denying
Defendant's motion to dismiss, motion for directed verdict, or motion for judgment
notwithstanding the verdict on the issues of self-defense or defense of others, or on
the issue of punitive damages. The trial court also did not err in instructing the jury
on punitive damages. Lastly, the trial court did not err in denying Defendant's
motions for a new trial.  Accordingly, we find no error, and uphold the decision of the
lower court.

I.    Factual and Procedural History

On 19 September 2009, Greta Clark ("Clark") and her boyfriend, John Lee Wiles ("Defendant") went to a local tool store searching for a lawn mower part. Clark waited in the car while Defendant went in the store. Defendant saw his neighbor, Tony Ray Simmons, Jr. ("Plaintiff"), inside of the store. Defendant claimed he did not know Plaintiff was in the store before entering, and Defendant had never spoken to Plaintiff before this encounter. However, Defendant believed that Plaintiff had made a complaint that prompted the county to order Defendant's parents to remove junk cars from their land. Defendant accused Plaintiff "of being at the root of the county issue" and cursed at Plaintiff. Plaintiff cursed back at Defendant, and eventually Defendant left the store.

Store employee Michael Muller ("Muller") testified at trial that Plaintiff entered the store at 3:30 p.m., and Defendant entered at 3:52 p.m. Muller did not think they were arguing, but another customer told Muller that "Those two guys are about to get into it." Defendant left at 3:58 p.m., and Plaintiff left at 4:06 p.m. after purchasing a breaker bar.

When Defendant returned to his vehicle, he told Clark that he saw Plaintiff in the store. Clark wanted to see what Plaintiff looked like, so she asked Defendant to wait until Plaintiff came out of the store. Plaintiff came out, got in his truck and drove away. Moments later, Plaintiff's truck reappeared near Defendant and Clark.

Defendant testified that Plaintiff came at him and Clark very aggressively, with a weapon, while cursing, yelling and screaming, and that he was in fear of imminent bodily injury or death.

Defendant ran around the back of his car, screaming for Plaintiff to stop. Plaintiff charged forward, and Defendant fired one round at Plaintiff from his personal firearm. Plaintiff required emergency surgery to address the wound. Detective Todd Arthur ("Detective Arthur") investigated the incident and said that the bar was steel, weighed between 10-15 pounds, and could cause "fatal injury or serious permanent disability if struck a person."

Plaintiff filed a complaint on 13 April 2017 which alleged battery and sought compensatory and punitive damages. Defendant answered the complaint, denying its material allegations and contending that he shot Plaintiff in self-defense or defense of another. Plaintiff moved for a directed verdict on his battery claim, and on 21 December 2018, the trial court entered a directed verdict in Plaintiff's favor. The issues of defenses and damages went to the jury. The jury returned a verdict rejecting Defendant's defenses and awarding Plaintiff $1,000,000.00 in compensatory damages and $2,000,000.00 in punitive damages.

The trial court entered a judgment on 23 January 2019. On 4 February 2019, Defendant filed a motion for judgment notwithstanding the verdict and motion for

new trial. The trial court denied Defendant's motions and entered a final judgment from which Defendant appealed on 20 May 2019.

## II.     Battery Claim

### a.  Standard of Review

"The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991) (citing *Kelly v. Int'l Harvester Co.*, 278 N.C. 153, 179 S.E.2d 396 (1971)).

> In determining the sufficiency of the evidence to withstand a motion for a directed verdict, all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant, giving the non-movant the benefit of every reasonable inference which may legitimately be drawn therefrom and resolving contradictions, conflicts, and inconsistencies in the non-movant's favor.

*Turner v. Duke Univ.*, 325 N.C. 152, 158, 381 S.E.2d 706, 710 (1989).

### b.  Plaintiff's Directed Verdict

Defendant contends that the trial court erred in granting Plaintiff's motion for directed verdict for the common law battery claim. We disagree.

The elements of the tort of common law battery are (1) the defendant intentionally cause bodily contact with the plaintiff; (2) the bodily contact caused physical pain or injury; and (3) the bodily contact occurred without the plaintiff's

consent. *Andrews v. Peters*, 75 N.C. App. 252, 256, 330 S.E.2d 638, 640-41 (1985). Defendant contends that the intent element should have been presented to the jury but does not argue the other elements.

In *Andrews*, this Court held that when the nature of intent is at issue in common law intentional torts:

> The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather it is an intent to bring about a result which will invade the interests of another in a way that the law forbids. The defendant may be liable although intending nothing more than a good-natured practical joke, or honestly believing that the act would not injure the plaintiff, or even though seeking the plaintiff's own good.

*Id.* at 256, 330 S.E.2d at 640-41. Here, there is uncontroverted evidence from Defendant's own sworn testimony on direct examination that Defendant intended bodily contact to occur. When questioned by his own counsel, Defendant testified that he purposely aimed his firearm at the biggest part of Plaintiff's body that would cause a non-lethal wound. This testimony was an unequivocal admission that Defendant intended bodily contact with Plaintiff by shooting him. The issue is whether the contact was justified, not whether a battery occurred. Accordingly, taken in a light most favorable to the non-moving party, the trial court did not err in granting Plaintiff's motion for directed verdict on the issue of common law battery.

In a separate but related challenge, Defendant contends that the trial court violated his constitutional right to trial by jury when it granted Plaintiff's motion for

directed verdict on his common law battery claim. N.C. Const. art. I, § 25. Because Defendant failed to preserve this argument for appeal, we decline to hear this argument.

c. Further Motions on Battery Claim

Defendant contends that the trial court erred in denying Defendant's motion to dismiss, motion for directed verdict, and for judgment notwithstanding the verdict. We disagree.

Plaintiff's testimony, inconsistencies in Defendant's testimony, and Clark's impeachment each raise genuine issues of material fact as to whether Defendant acted in either self-defense, or in defense of another from a felonious assault. Therefore, it was appropriate for the defenses to go before the jury. The trial court did not err in denying Defendant's motion to dismiss, motion for directed verdict, or motion for judgment notwithstanding the verdict.

III. Self-Defense or Defense of Others

a. Standard of Review

"On appeal the standard of review for a JNOV is the same as that for a directed verdict, that is whether the evidence was sufficient to go to the jury." *Tomika Invs., Inc. v. Macedonia True Vine Pentecostal Holiness Church of God, Inc.*, 136 N.C. App. 493, 498-99, 524 S.E.2d 591, 595 (2000).

b. Analysis

Defendant contends that the trial court erred when it denied Defendant's motion for directed verdict and motion for judgment notwithstanding the verdict on the issues of self-defense or defense of another. We disagree.

Reviewing Defendant's appeal from the trial court's denial of his motion for directed verdict, we must consider the evidence in the light most favorable to the non-moving party, Plaintiff. *Springs v. City of Charlotte*, 209 N.C. App. 271, 274-75, 704 S.E.2d 319, 322-23 (2011). This is the converse of our analysis regarding Plaintiff's motion for directed verdict, in which we considered the evidence in the light most favorable to Defendant.

Considering the evidence in the light most favorable to Plaintiff, it was sufficient to raise a genuine issue of material fact as to whether Defendant acted in self-defense or in defense of another. When interviewed by police shortly after the shooting, Defendant recounted the animosity he held toward Plaintiff, and Defendant asserted his perception that Plaintiff had cheated him and his family through the years. Richard Koch, counsel for Cabarrus County, testified via video deposition that Plaintiff was one of the neighbors who provided affidavits against Defendant's family for zoning violations.

We also must consider Plaintiff's testimony about the shooting, including the following: after Plaintiff exited the store, Defendant was waiting outside, confronted him, and said "I've got something for you . . ." Defendant then returned to the rear of

his vehicle, pointed the gun at Plaintiff and pulled the trigger. Defendant then shot Plaintiff in the abdomen, stood over him, and said "I wish I had killed you . . . . Die." Furthermore, we consider the videotaped deposition testimony of Blake Anthony Portis, Jr. ("Portis"), who worked in a gun store in Virginia, that on a date after the shooting Defendant sought to purchase a higher caliber gun than the .380 caliber pistol he used to shoot Plaintiff. Defendant commented to Portis, "I'm sure you're aware of what's going on in North Carolina, and that's the problem. When I shot [him], all I had was a .380. And if I'd have had [sic] a .45, I wouldn't be dealing with all the legal problems that I'm dealing with now."

Considering the evidence in the light most favorable to Plaintiff, it was sufficient evidence to go to the jury on the disputed issue of whether Defendant shot Plaintiff in self-defense or in the defense of another person, Clark. Accordingly, the trial court did not err in denying Defendant's motions for directed verdict and for judgment notwithstanding the verdict on the issues of self-defense or defense of another.

## IV.  Punitive Damages

### a. Standard of Review

As explained in Section III, a, above, our standard of review of a trial court's ruling on JNOV is the same as that for a directed verdict. Because we are reviewing Defendant's appeal from the denial of these motions, we must consider the evidence

in the light most favorable to Plaintiff. On appeal from a judgment for punitive damages, the standard of review for both directed verdict and JNOV is "that a claimant must prove the existence of an aggravating factor by clear and convincing evidence." N.C. Gen. Stat. § 1D-15(b) (2007); *Scarborough v. Dillard's, Inc.*, 363 N.C. 715, 719, 693 S.E.2d 640, 643 (2009).

b. Analysis

Defendant contends that the trial court erred when it denied Defendant's motion for directed verdict and motion for judgment notwithstanding the verdict on the issue of punitive damages. We disagree.

Incorporating the analysis from section IV above, the evidence was clear and convincing to support the jury's finding that Defendant's actions were willful and wanton or malicious. Taken in a light most favorable to Plaintiff, as the non-moving party, the evidence as to punitive damages, was sufficient as a matter of law to be submitted to the jury. Accordingly, as to the issue of punitive damages, the trial court did not err in denying Defendant's motion for directed verdict and motion for judgment notwithstanding the verdict.

## V. Jury Instructions Regarding Punitive Damages

a. Standard of Review

"[T]he trial court has wide discretion in presenting the issues to the jury and no abuse of discretion will be found where the issues are 'sufficiently comprehensive

to resolve all factual controversies and to enable the court to render judgment fully determining the cause.'" *Murrow v. Daniels*, 321 N.C. 494, 499-500, 364 S.E.2d 392, 396 (1988) (quoting *Chalmers v. Womack*, 269 N.C. 433, 435-36, 152 S.E.2d 505, 507 (1967)).

b.  Analysis

Defendant contends that the trial court erred in its instruction to the jury on punitive damages.  We disagree.

Incorporating the analysis in sections IV and V above, the evidence was clear and convincing in nature that Defendant's actions were willful and wanton.  We review the evidence in the light most favorable to Plaintiff, and viewed in that light, the evidence showed that Defendant acted with malice and willfully and wantonly. Therefore, the trial court did not abuse its discretion in submitting the issue of punitive damages to the jury or instructing the jury on punitive damages.

VI.    New Trial

a.  Standard of Review

"[A]n appellate court's review of a trial judge's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge." *Worthington v. Bynum*, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982).  "Where errors of law were committed . . ., the trial court

is required to grant a new trial." *Eason v. Barber*, 89 N.C. App. 294, 297, 365 S.E.2d 672, 674 (1988).

b. <u>Analysis</u>

Defendant contends that the trial court erred and abused its discretion in denying Defendant's motions for a new trial in violation of N.C. R. Civ. P. 59(a)(1)(6) and (7). We disagree.

Defendant's first claim of irregularity is that the focus of the trial was on Defendant's criminal investigation, precluding evidence of the investigation's result. But at the outset of trial, defense counsel stipulated that no reference would be made before the jury that Defendant "was never charged with a crime or prosecuted for the events at issue in this litigation." Defendant now argues that excluding this evidence prejudiced him. Defendant also contends that he was prejudiced because multiple officers testified, and the word "police" was used excessively at trial. This is invited error, and thus we reject this argument. The focus of the trial was on the events of 19 September 2009 and the impact that those events had on Plaintiff's life. Both sides elicited testimony from police officers, and counsel for both parties used the word "police" on multiple occasions out of necessity. There was nothing irregular about the focus of the trial and the use of the word "police."

Defendant's second claim of irregularity is that the trial court erred in denying his motion for directed verdict on the issue of battery. We have already addressed

this issue in this opinion. The trial court did not err, and the denial of the motion for directed verdict was not an irregularity.

Defendant's third claim of irregularity is that non-bifurcation of the issues prejudiced him. The parties stipulated in the Consent Order on Final Pre-Trial Conference that:

> [I]n an effort to expedite the trial, there will be no bifurcation or severance of the issues to be tried in this case. Defendant is aware of his right to request a separate trial on the issue of punitive damages under Chapter 1D of the North Carolina General Statutes and expressly waives that right.

This too is invited error.

Defendant contends that the trial court abused its discretion in declining to grant Defendant's motion for new trial, on the ground that excessive damages were awarded under the influence of passion and prejudice. There was ample testimony from Plaintiff, four treating physicians, and Plaintiff's family regarding the nature and extent of Plaintiff's injuries, and how the pain and suffering impacted Plaintiff's life. The trial court reviewed this evidence, and in its sound discretion, decided that the evidence supported the damages awarded by the jury and was not made under any improper influence. Therefore, the trial court did not err.

Lastly, Defendant contends that the directed verdict in Plaintiff's favor on the battery claim was against the greater weight of the evidence. This is essentially a compilation of all Defendant's arguments. The record shows that the trial court

carefully considered the evidence and properly denied the request for a new trial.

NO ERROR.

Judges INMAN and ZACHARY concur.